**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ARNOLD ISELIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-CV-566-JED-TLW |
| v. ) | |
| ) | |
| THE BAMA COMPANIES, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Court has for its consideration defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion") (Doc. 16), which plaintiff has opposed (Doc. 18). Defendant seeks to dismiss all four of plaintiff's causes of action for failure to state a claim upon which relief may be granted.

**I.    Background**

Plaintiff's Amended Complaint (Doc. 15) asserts the following causes of action brought pursuant to the amended version of the Americans with Disabilities Act ("ADAA"): (1) disability discrimination based on a perceived disability, (2) disability discrimination based on failure to hire, (3) disability discrimination based on failure to accommodate, and (4) misuse of employment testing. In support of his claims, plaintiff alleges the following facts.

Plaintiff began his employment with a temporary employment agency, Prime Industrial Recruiters, Inc. ("Prime") on January 7, 2015. Prime assigned plaintiff to work as a general production worker for defendant at its location on 66th Street in Tulsa, Oklahoma. Plaintiff was paid $10.00 per hour by Prime. Plaintiff states that on January 5, 2015, he informed Prime and defendant that he had a disability. On April 22, 2015, plaintiff moved to defendant's 11th Street

location in Tulsa, Oklahoma, due to back issues that interfered with his ability to perform work at the 66th Street location.

Plaintiff later applied for a permanent position with defendant. On June 16, 2015, plaintiff received an offer to work as a permanent general production worker at defendant's 11th Street location for $10.40 an hour, with the promise of an additional pay increase of $0.25 an hour after 90 days of employment. Defendant's offer of permanent employment was conditioned upon plaintiff passing a Physical Demand Assessment (the "Assessment").

Plaintiff took the Assessment on June 18, 2015. The next day, he was informed that he had not passed and was therefore being terminated from his employment with defendant. At no point prior to defendant's conditional offer of permanent employment had plaintiff been required to take any sort of Assessment. Plaintiff's employment with defendant was thereafter terminated. Plaintiff filed a charge of disability discrimination with the EEOC and then initiated this lawsuit.

## II. Legal Standard

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). The *Twombly* pleading standard is

applicable to all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III. Discussion

#### A. Disability Discrimination

Under the ADAA, a plaintiff is required to show that he is (1) disabled within the meaning of the ADAA, (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability or perceived disability. *See Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 690 (2015). Defendant argues that plaintiff fails to state a claim for his first three causes of action because he cannot establish the second element of the prima facie case for disability discrimination. Because defendant does not contest any of the other elements, the Court confines its analysis to the second prong.

This prong requires a two-step analysis. First, the Court must determine whether the plaintiff can perform the essential functions of the job. *Adair v. City of Muskogee*, 2016 WL 3034084, at *7 (10th Cir. May 26, 2016). Second, if the Court concludes that plaintiff is unable to perform the essential functions of the job, the Court must determine whether any reasonable accommodation would allow the plaintiff to perform the functions. *Id.* The ADAA gives "consideration . . . to the employer's judgment as to what functions of a job are essential." *Hawkins*, 778 F.3d at 884 (quoting 42 U.S.C. § 12111(8)). Moreover, the Tenth Circuit's "disability-discrimination caselaw explicitly incorporates the EEOC's regulations and counsels

3

in favor of deference to an employer's judgment concerning essential functions. *Id.* at 885 (internal citations and footnote omitted). A district court "'will not second guess the employer's judgment when its description [of the essential functions] is job-related, uniformly enforced, and consistent with business necessity. In short, the essential function inquiry is not intended to second guess the employer or to require the employer to lower company standards.'" *Id.* at 888 (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004); *see also Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001) (holding that plaintiff could not show that he could perform the essential functions of the position with or without reasonable accommodation because he was unable to meet the necessary job-related physical requirements).

In support of this element, plaintiff's Amended Complaint provides the following: he was "qualified and able to perform the essential functions of his position as a general production worker for Defendant," because he worked as a general production worker for defendant for a period of five months, during which he alleges he was occasionally provided reasonable accommodation. (Doc. 15 at 3-4, ¶¶ 17, 22, 27). Plaintiff's complaint, however, also shows that a requirement of the permanent position with defendant was to pass the Assessment. Because plaintiff failed the Assessment, he was terminated. (*Id.* at 2, ¶¶ 10, 11). Plaintiff appears to argue that because he worked as a temporary general production worker before applying for and being offered the permanent general production worker position, he was "qualified" to perform the essential functions of the job—notwithstanding the results of the Assessment. The Court agrees with defendant that plaintiff's Amended Complaint does not state a plausible claim for relief.

### 1. Plaintiff's qualifications to perform the essential functions

Under the first step of the analysis under the ADAA, plaintiff cannot show that he was qualified to perform the essential functions of the job. Defendant asserts that the Assessment was the method it used "to determine whether plaintiff as qualified to perform the essential functions of the position with or without accommodation." (Doc. 16 at 6). Accordingly, the fact that plaintiff failed the Assessment indicated to defendant that he could not perform the essential functions of the job, which warranted the termination of his employment. As stated, the Court must defer to defendant's judgment regarding the essential functions of the position and cannot second guess defendant's chosen method of determining whether plaintiff was qualified. *See Hawkins*, 778 F.3d at 888; *see also Adair*, 2016 WL 3034084, at *9-10 (doctors' reports concluding that plaintiff could not perform duties of a firefighter, combined with evidence of plaintiff's back injury, conclusively established that the plaintiff could not satisfy the essential functions of his role).

Moreover, plaintiff has not alleged any facts to suggest that the Assessment was not job-related, not consistent with business necessity, or that it was not uniformly imposed as a condition of permanent employment. In light of the Assessment's results, plaintiff's bare assertion that he is able to perform the duties of the position is insufficient to state a claim. *See Adair*, 2016 WL 3034084, at *9 (plaintiff's argument that he was qualified was insufficient because it was based solely on "his personal experience"); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) ("We are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.").

### 2. Reasonable accommodation

If the plaintiff is unable to perform the essential functions of the position, the Court must reach the second step of the analysis and determine if any reasonable accommodation exists. *See Adair*, 2016 WL 3034084, at *7. Plaintiff alleges that defendant "fail[ed] to accommodate [him]" and failed to "engage in an interactive process to determine if [he] could be reasonably accommodated," (Doc. 15 at 5, ¶ 30), but presents no facts to suggest any accommodation that defendant could have made. As a result, plaintiff is unable to satisfy the second element of the prima facie case. *See Adair*, 2016 WL 3034084, at *11 (plaintiff could not show second element of prima facie case because he failed to "suggest any accommodations that the City could have made to retain him as a firefighter").

Because plaintiff has failed to state a claim for the prima facie case of disability discrimination, his first three causes of action cannot stand.

### B.  Misuse of Employment Testing

Plaintiff's fourth cause of action asserts that defendant wrongfully required him to take the Assessment after offering him the permanent general production position. In support of this allegation, plaintiff cites 42 U.S.C. § 12112(d)(3), which provides that an employer "may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination," so long as the following conditions are met:

> **(A)**  all entering employees are subjected to such an examination regardless of disability;
> **(B)**  information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that--

> **(i)** supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
> **(ii)** first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
> **(iii)** government officials investigating compliance with this chapter shall be provided relevant information on request; and
>
> **(C)** the results of such examination are used only in accordance with this subchapter.

However, plaintiff does not allege that defendant violated any of the above conditions. The sole assertion plaintiff provides in support of his claim is that instead of being required to take a physical examination *before* starting the temporary position, he was required to take it after "almost six (6) months," during which he asserts he was already performing "the essential functions of his job." (Doc. 15 at 5, ¶¶ 33-34; 6, ¶ 36). This is insufficient to state a claim for relief. Accordance

Defendant's Motion argues that because plaintiff was applying for a different position, *i.e.*, a permanent position, he was treated as a job applicant[1] and thus defendant properly conditioned his employment upon the results of the Assessment pursuant to 42 U.S.C. § 12112(d)(3). In response, plaintiff contends the temporary and permanent general production positions were the same, so he did not apply for a "new" job. However, plaintiff's Amended Complaint undermines his own assertion and provides support for defendant's position. For

---

[1] Defendant cites the following EEOC guidance, which states: "An employer should treat an employee who *applies* for a new job as an applicant for the new job." Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), 2000 WL 33407181, at *5 (emphasis in original). While not binding, EEOC guidance is "entitled to [a court's] respect to the extent that it has the 'power to persuade.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1047 n.16 (10th Cir. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 111 n.6 (2002)). The Court is persuaded by this guidance, as it is consistent with the ADAA provisions referenced above.

example, plaintiff admits that he was employed by Prime as a temporary general production worker, not by the defendant. (Doc. 15 at 1, ¶ 5). By contrast, plaintiff applied directly to defendant for the permanent general production worker position, and upon accepting the position, he became defendant's employee. Moreover, it is unclear whether defendant could have required plaintiff to take the Assessment when he was assigned to the temporary position because he was not an employee of defendant. In support of its argument that the two jobs were different, defendant also points to the fact that the permanent position paid a higher wage than the temporary position. (Doc. 16 at 9). Finally, the inherent nature of the position—that it was permanent, and not temporary—also weighs in favor of defendant's position. Contrary to plaintiff's assertion, the two jobs could not be the "same." It is clear, based on the above as well as the ADAA provisions cited by plaintiff himself, that defendant did not err in conditioning plaintiff's offer of permanent employment on the results of the Assessment. An allegation of improper timing alone cannot support a claim for misuse of employment testing.[2]

## IV. Conclusion

For the reasons above, defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 16) is **granted** and plaintiff's Amended Complaint (Doc. 15) is **dismissed**.

A separate judgment of dismissal will be entered herewith.

---

[2] In his Response, plaintiff states that defendant is unable to show that the Assessment was "job-related and consistent with business necessity," citing 42 U.S.C. § 12112(d)(4). (Doc. 18 at 7). This allegation was not included in plaintiff's Amended Complaint. Because a Rule 12(b)(6) dismissal motion must be determined based on the factual assertions in the complaint alone, the Court declines to assess the merits of plaintiff's new allegation. In any event, defendant has persuaded the Court that the Assessment was job-related and consistent with business necessity, particularly in light of the long term and permanent nature of plaintiff's new position as an employee of defendant.

SO ORDERED this 9th day of August, 2016.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE